CLERK U.S. DISTRICT COURT
RECEIVED
FEB -7 2018
EASTERN DIST. OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

JOHNNY LEE WALKER                 §
V.                                §   CIVIL ACTION NO. 6:17-CV-166
LORIE DAVIS, ET AL.               §

## PLAINTIFF'S AMENDED PLEADING TO DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff Johnny Lee Walker, hereafter "Walker" or "Plaintiff" has been ordered by this Court to file an amended pleading to the Defendant's motion for a more definite statement pursuant to Federal Rule of Civil Procedure 7(a).

### I. STATEMENT OF THE CASE

On March 17, 2017, Walker filed his 42 U.S.C. § 1983 lawsuit complaining of the unconstitutional living conditions in violation of his Eighth and Fourteenth Amendment rights. Walker claims that he suffers that he is doubled-cell in a housing for years that is designed to house one prisoner, he sufferes from extreme sleep deprivation, the showers are overcrowded, there are no access to toilets in the dayroom, he must eat contaminated  foods and drink contaminated water, and he is subjected to extreme heat and cold temperatures and unsafe living conditions. At all times, Walker is subjected to these conditions.

### II. AMENDED PLEADING

The Court has set out the following amended pleading to specifically state facts as to how each individual defendant harmed Walker, and they are:

1. If known, provide date and concise facts giving rise to each claim alleged;
2. The individual or individual Walker desire to name in this suit;
3. Statement as to how each defendant is involved in each claim alleged;
4. Harm Walker suffered as a result of claims raised in this suit;

5. The specific relief sought by Walker in this suit; and

6. Whether Walker has exhausted claims raised.

In this amended pleading, Walker asserts that the at all times the defendants acted under the color of state law, as he alleged:

## A. INADEQUATE LIVING SPACE

The Ruiz Court has held that a "single inmate assigned to these forty-five (45) square-foot TDC cells can do little more than lie or sit on their bunk or the floor, or use the sanitary facilities. See Ruiz v. Estelle, 679 F.2d 1115 (5th Cir. 1982). The Court further held that "TDC's rudimentary system of inmate classification is totally inadequate properly to assure the peaceful capabilities of cell mates; security supervision capabilities fall short of being able to protect inmates from potential violence at the hands of cell mates." Id., at 1140-42.

1.   In the filing of this lawsuit, Defendants Collier, Davis, Catoe, Cooper and Richardson, has caused Walker to suffer from severe mental and physical health problems as a results of being doubled-celled for years without relief in the space of 45 sq/ft, of which 22 square/feet is uncumbered spaced, and he is in constant dangers and fear for his life because lack of security protection.

2.   Due to inadequate security and staff shortage, Walker is unable to defend and protect himself from the hands of violent, agressive, and mentally unstabled cell mates.

3.   Walker further contends that been doubled-celled in such minute living quaters places him at risks of widespread diseases, incurable viruses and harmful bateria secreted from infected cell mates.

4.   A result of double-celling by the defendants, it has substantially contributed to numerous disciplinary offenses, psychriatic commitment and suicide intendencies, as well as extreme discomforts ans fear of being housed with a PREA violator or homosexual.

5.   The distinguishable manifestation of hostility and depression suffered by Walker are increased blood pressure, aggressive behaviors and extrme psychological withdrawals.

6.   During semi-annual lockdowns, or to say, every six months, Walker is housed with a cell mate **24** hours a day for minimum three weeks in these 45 square-feet living space housing, furniture and fixtures are included in this living space.

7.   Walker suffer from chronic hypertension, extreme heat restriction, acute left heel and achilles tendent damage, arm broken twice, gunshot wound to left leg makes him more vulnerable to assaults.

8.  The staff shortage and very poor lack of security places Walker in constant dangers of being attcaked by cellmates that smokes **K-2**. Such person can attack Walker without cause or warning.

9.  The defendants are aware of these dangers and the expert facts that an idividual such as Walker being place in a living space which he can only sit or lay down and place another person of equal size that must share that space for years without relief can cause severe psychological and physical harm to the person.

This is why in the final disposition in <u>Ruiz</u>, supra, the Court, ruled that the "routine double-celling of inmates in the forty-five and sixty square foot cell" are to be eliminated. The defendants are aware of this ruling and have continue to enforce this unconstitutional acts.

## B. SLEEP DEPRIVATION

The Fifth Circuit has held that sleep is a basic human need. <u>Harper v. Showers</u>, 174 F.3d 716, 720 (5th Cir. 1999); also see <u>Merritt v. Hawk</u>, 153 F.Supp.2d 1216, 1228 (D.Colo. 2001).

10. This Coffield Unit no longer have what TDCJ deemed as rack-time status. The Unit no longer provide designated sleep hours. Defendants Catoe, Cooper and Richardson has create policies depriving Walker of his basic need of sleep.

11. Defendants Collier and Davis have been made known of these Eighth Amendment violations and have fail to correct the problems.

12. Walker is subjected to the following activities during the hours TDCJ designated sleep for its prisoners: **Noted Rack-time Hours: Weekdays Rackup - 10:30PM to 06:30AM / Weekend Rackup - 01:30AM to 06:30AM.**

| | | |
|---|---|---|
| a. Mail call/Lay-ins issued | Between | 10:00PM - 11:30PM |
| b. Bed/book count | Between | 12:00PM - 01:00AM |
| c. Linen exchange [Thursdays] | Between | 01:00AM - 02:00AM |
| d. Chow call/Pill Window/Medical lay-ins and Outgoing Chain | Between | 02:30AM - 04:00AM |
| e. Population Shower/ Vocation | Between | 03:30AM - 05:00AM |
| f. Field Force/Recreation | Between | 05:30AM - 06:00AM |
| h. Dayroom Time/Lay-ins and Passes and Work call | Between | 06:30AM - Rack-up |

13. Rack time operation activities **d thru h** stated above is when the cell doors are opened and slammed with great force. The iron against iron force cause the cell front and walls to vibrate.

3

14.   The extreme heat and cold conditions has had an affect on
      Walker ability to sleep due to the uncomfortable temperatures he
      must endure.

15.   The sleep deprivation caused by the defendants suffer Walker to
      the point that he has constant headaches, dizziness, fatigueness,
      weaknened immune system and he walks about in a zombie-like state
      all day.

16.   Walker complained about this matter to Defendants Catoe, Cooper
      and Richardson. But instead of correct the problems, they have
      created more policies to deprive Walker of his much needed rest.

   Sleep is critical to human existence, and conditions that prevents
sleep have been held to violate the Eighth Amendment. See e.g. Tafari
v. McCarthy, 714 F.Supp.2d 317 367 (N.D. N.Y. 2010) ("Courts have
previously recognized that sleep constitutes a basic human need and
conditions that prevent sleep violates inmate's constitutional rights.")
(citing Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1990)

## C. EXCESSIVE OVERCROWDING IN SHOWER

   Defendants Catoe, Cooper and Richardson has shown deliberate indif-
ference to Walker health and safety by creating policies that places
him vulnerable to assaults of an assailant's predatory nature while
showering. They are knowledgeable of these dangers and risks because
that have established policies to enforce them. See Farmer v. Brennan,
511 U.S. 825, 114 S.Ct. 1970 (1994).

17.   The Coffield Unit's shower has approximately 75 shower heads
      but only 37 are operable.

18.   During population shower, the security has 200 to 250 inmates
      at a time.

19.   *Security staff in adequate to watch all improper shower acti-
      vities that are occurring behind the walls were shower is been
      conducted.

20.   There are no partitions to separate the privacy of one inmate
      from another. There are inmates standing in front of Walker, be-
      hind him and either side while he shower.

21.   Walker have personal witness forced PREA violations against
      the weak and mostly white inmates.

22.   The overcrowding creates these dangers and Walker is subjected
      to these dangers daily. The defendants are aware of these dangers
      and place every inmate at risk for time efficiency.

   The Supreme Court has held in the Farmer's Court that a defendant
also need not have knowledge of a specific risk to a specific individ-

4

ual from a specific source. For example, in an inmate-inmate assault
assault case,"it does not matter whether the risk comes from a single
source or multiple source, any more than it matters whether the pri-
soner faces an excessive risk of attacks for reasons personal to him
or because all prisoners in his situation face such a risk." Farmer,
511 U.S. at 843; see e.g. Brown v. Budz, 398 F.3d 904, 914-15 (7th
Cir. 2005)(Holding deliberate indifference can be established by
knowledge either of a victim's vulnerability or of an assilant's pre-
datory nature; both are not required.) Forty percent of the Coffield
Unit's population is either sex offenders or homosexuals. Walker is
clearly at risk of both.

## D. NO PUBLIC TOILETS.

A sanitary enviroment is a basic human need that a penal institu-
tion must provide for all inmate. Gates v. Cook, 376 F.3d 338 (5th
Cir. 1997). Proximity of humane waste, even for relative brief periods
of time, has been of particular concern to courts in sanitation cases.
See e.g. DeSpain v. UpHoff, 264 F.3d 965, 974 (10th Cir. 2001).

23.   Defendants Collier, Davis, Catoe, Cooper and Richardson are
aware that the Coffield have no accessible public toilets for gen-
eral population living areas.

24.   Defendants Catoe, Cooper and Richardson do not conduct the
policy required hourly ingress and egress Allowing Walker to access
the housing toilet.

25.   Walker will be trapped in the dayroom or hallways for hours
without access to a toilet.

26.   Walker is caused to suffer in agonizing pains because he has no
humane means of bodily release.

27.   Walker will urgently request that he be allowed to use the toil-
et to relief himself. Most times Walker is told to hold it or find
a corner in the dayroom.

28.   If Walker relieve himself on the Unit's floor, disciplinary act-
ion will be taken against himself, or if he continue to pursue
his right to access the toilet, his diligence may result in being
locked up and disciplined.

29.   When Walker and other inmates loses their bodily control, they
are forced to be subjected to the inhumane situations for hours.

30.   To relieve himself, Walker must soil his pants like a small
child in his on feces, or squat on a corner like an animal.

31.   The security staff finds Walker's sufferings and humilation entertaining. These violtile acts have been going on for years.

32.   The defendants has continuous deprive Walker of a basic human need using inhumane methods.

The failure by defendants to provide access to public toilet is not atypical to prison life. Walker have been on several of TDCJ penal institutions and they all have accessible public toilets. The defendants has shown deliberate indifferenc to Walker basic human needs. Gates v. Cooks, 376 F.3d 323, 338 (5th Cir. 2004).

## E. EXTREME TEMPERATURE CONDITIONS

A prisoner must be provided with "shelter which does not cause his degeneration or threaten this mental and physical well being" See e.g. Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980).

33.   Defendants Collier and Davis are aware of the ongoing structure problems that plagues the Coffield Unit and have done nothing to correct these numerous deficiencies that threatens inmates mental and physical health.

34.   Defendants Catoe, Cooper, and Richardson has shown deliberate indifference to Walker mental and physical health by the inhumane conditions Walker must suffer each year for months at a time.

### EXTREME HEAT CONDITIONS

35.   The outer housing walls of the Coffield Unit consists of small window panes from the floor to the ceiling.

36.   The cell fronts consists of of bars crovered by iron grates painted black and face the window paned wall.

37.   The sun shines into the cells to the back wall of the cell and there is no escape from the heat.

38.   The sun heats the cell front walls and iron metal grates and concrete walls creating a oven-like effect.[1]

39.   Exepert has determine that the small circular fans provided by the Unit's commissary does nothing more than stir the hot air so the heat is evenly distributed about the cell.

40.   The cell are very small which makes it easy to be heated and two occupants with their personal property decreases the cell space magnifiying the heat index.

41.   Walker contends that he is exposed to extremely high temperatures during the summer months with no means of escaping the heat.

42.   Walker has hypertension and he takes heat sensitive medications and these extreme heated conditions causes him to suffer unbearable pains and risks of heart attacks or strokes and possibly death.

------------------------
1. McCollum v. Livingston, U.S.D.C. (S.D.Texas), Case NO. 4:14-cv-03253; 2017 U.S. U.S. Dist. LEXIS 19602.

43.     The only remedy suggested by the defendants is that Walker drinks copious of water and be allowed to visit a respite area for five minutes.

44.     The drinking water is contaminated and the respite areas are not honored by the security staff.

45.     If Walker is in the housing he will not be able to notify security because they fail to conduct their security walks or ingress/ egress hourly.

46.     The one fan provided serve little or no cause for the living areas and the ventilation is poor and inadequate.

47.     Upon information and belief, and Walker do believe, that the multiple deaths that occurs of the Coffield Unit during the summer months are heat-related but written under other casues.

### EXTREME COLD CONDITIONS

48.     There are several hundred windows, from floor to ceiling, that serves as the only protection from the extreme cold temperatures during the cold moths.

49.     There are hundred of window panes that are not properly sealed and the cold winter air seeps through into the housing living areas.

50.     The heat system for the housing barely output heat when operating and the venting are facing the windows, not the housing living areas.

51.     The only item provided by Defendants Catoe, Cooper, and Richardson are a tattered and poorly insolated jacket and tattered blanket.

52.     Temperature has dropped to the 30's and the jacket and blanket is insuffieient to protect Walker from the extreme cold conditions.

53.     The only heat supply is in the officer rotunda areas and the exhaust fan are use to remove the excessive heat depriving of any remaining comforts by creating a tunnel suction effect depleting Walker body heat.

54.     Walker sleeps in all cothing, necessities and linen provided by the defendants and he is uncomfortably cold. It similar to sleeping out side.

A prison that fails to provide safe and adequate shelter may be ordered closed. See Palmer v. Johnson, 193 F.3d 346, 352-53 (5th Cir. 1999). During the extreme heat, Walker suffers dizziness, dehygration, muscle cramps and spasms and irregular heartbeats, memory lapses and migraine headaches. During the winter months, Walker suffers severe aches in his joints, tembles, shakes and overall discomforsts.

7

## F. CHOWHALL CONTAMINATION AND FILTH

Prison food must be "prepared and served under conditions which do not present an inadequate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 693 F.2d 559, 570-71 (10th Cir. 1980) cases cited; accord, Johnson El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989). Numerous courts have found unsanitary food service to be unconstitutional. Lightfoot v. Walker, 486 F.Supp. 956, 962-63 (S.D.Ill. 1980). Several have required food handlers to be medically certified. See e.g. Drake v. Velasco, 207 F.Supp.2d 809, 813 (N.D.Ill. 2002).

55.   One of the most filthiest and unsanitary place on the Coffield Unit is the chowhall, especially during chow time.

56.   These conditions are known and observed by Defendants Catoe, Cooper and Richardson and these matter have been brought to the attention of Defendants Collier and Davis but no corrective actions have been taken.

57.   Roaches, spiders and birds infest the Unit's chowhall year round and these unsanitary conditions are also known by the ACA officials and inspectors but they continue to waive these infractions.

58.   The eating utentils; cups, plates and spoons, are chipped, brokened and peeling.

59.   There are food-borne pathogens trapped in the damaged areas in which Walker is force to eat from to sustain his good health and risking his good health to do so.

60.   The utensil are not washed at the mandatory temperature, with inadequate detergent and are not allowed to drip dry before use. The contaminated residue waste of the washing is mixed with the food Walker must eat to sustain his good health.

61.   Bacteria waste is visible under the peeling and in the broken areas of the utensils. Walker actually see discolorations and trapped foods in these utensils.

62.   The food service staffs and inmates do not wear the proper head-gear and gloves.

63.   These multiple food service violations exposes Walker to every terminal virus, bateria and disease because these unprotected inmates and staff cross-contaminate every tray they handle.

64.   Walker must thread through sewage water daily to receive his tray and he must sit in the filth and dropping left by the inmates before him.  A constant wet floor and food dropping are a slip hazard during feeding.

65.   Walker must fight flies and gnats and avoid being stung by wasps and bees while eating.

66.    These risks and unsanitary conditions  Walker face seeking a life necessity.

If health hazards in food preparation and service are sufficiently gross, Prisoners need not prove that serious food-borne illness has already occurred; the risk is enough. See e.g. Benjamin v. Fraser, 343 F.3d 35, 56 (2d Cir. 2003); Drake v. Velasco, 207 F.Supp.2d 809 813 (N.D.Ill. 2002). Clearly, Walker is at risk.

## G. CONTAMINATED DRINKING WATER

Prison officials are obligated to provide sufficient water, and it **must** be fit to drink. See Cole v. Collier, U.S.D.C. (S.D. Texas), Case No. 4:14-CV-03253; 2017 U.S. Dist. LEXIS 19602; See also e.g. Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001).

67.    Defendants Collier, Davis, Catoe, Cooper, and Richardson are well aware of the ongoing contamination in the Coffield Unit's drinking water supply and they are aware they the inmates are exposed to the risks and dangers.

68.    The Coffield Unit's water supply is contaminated with coliform baterias. Or to say, there is multiple feces in the dinking water.

69.    Multiple inmates on this Unit have been infected with H. Pylori bacteria as a result of drinking this contaminated drinking water. This bacteria causes sores and cancer in the stomach and intestine. There is no known cure.

70.    TDCJ encourage inmates on this Unit to drink copious amount of drinking water during the hot months.

71.    Walker has hypertension and takes heat-sensitive medication and he must drink copious amounts of this contamianted water in order to stay hydrated during the hot months.

72.    Walker is forced to drink this contaminated water with high levels of colifrom bacterias to stay hydrated while risk being exposed to stomach sore and intestinal cancer and other unknown diseases.

73.    Walker has suffered digestive problems, vomiting, fever and cold sweats, and unexplainable knots and rashes.

74.    Walker have requested clean drinking water but the defendants have failed to provided Walker water that is fit to drink.

Deliberately indifferent exposure of prisoners to sewage or other forms of human waste may violate the Eighth Amendment. Gates v. Cook, 376 F.3d 323, 340-41 (5th Cir 2004). Contaminated drinking water can violate the Eighth Amendment. See e.g. Robinson v. Page, 170 F.3d 747, 748-49 (7th Cir. 1999). Walker is forced to drink sewage water in violation of the Eighth Amendment.

## H. UNSAFE HOUSING AND LIVING AREAS

It is "unquestionably, the small cells in which inmates are confined, along with the deteriorating and unsanitary conditions in the main living areas, have a direct detrimental impact on the health and well being of the inmates." See e.g. Ramos v. Lamm, 639 F.2d 559 (10th Cir 1980).

75. Defendants Collier, Davis, Catoe, Cooper, and Richardson have a long standing awareness of the below listed violations Walker face daily in the Coffield Unit's housing and living areas.

76. The building structure is collapsing in areas resulting in cracks on the floors, walls and ceiling and also leaks in the roofs throughout the living areas.

77. There are black pores and fungi in the living areas mostly on the ceiling in the cracks of the walls.

78. All the metal fixtures in the living and housing areas are decayed with rust exposing Walker pores, open wounds and clothings to these metal poisonings.

79. There are no climbing implements in the housing to accommodate safe access to the top bunk bedding area. Walker have injured himself numerous times trying to access and exiting his bedding area. This would explain his heel and achilles tendent damage in Paragraph **7**.

80. Walker is at constant dangers and risks from the addicted **K-2** smokers due to their violent behavior and unprovoked attacks. The lack of security coupled with the present security failure to act creates that risk and those dangers.

81. During the warm month, Walker housing area is infected with spiders of all kind, every kind of insect, birds and vermits and he risk being bit by poisonous spider year round.

82. When Walker is having serious confrontation with his cell mate and he seek assistance of a housing change, the request is denied and the confrontation is encouraged by the ranking officials

83. Walker is subjected to these risks and/or dangers daily with no means of near future relief and no other means to address these issues.

The Supreme Court has held that unsafe conditions that "pose an unreasonable risk of serious damage to a prisoner's future health" may violate the Eighth Amendment even if the damage has not yet occurred and may affect every prisoner exposed to the conditions. Helling v. McKinney, 509 U.S. 25, 33 113 S.Ct. 2475 (1993). Because the defendants has ignored the upkeep of this facility and allow it to deteriorate to a level of unsafe and unsanitary conditions.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Walker has exhausted all available administrative remedies for his claims and defendants.

## CLAIMS FOR RELIEF

Walker realllege and incorporate Paragraphs 1 – 83 in this amended pleading seeking the following claims for relief:

84.   The actions of Defendants Collier and Davis double-celling Walker in a cell with another offender of equal size has caused mental and physical harm and risks of assault at the hands of violent cell mates.

85.   Defendants Collier and Davis housing two inmates in a cell where only one inmate can do no more than sit on the bunk or floor or use the santiary facilities for years without relief in a 45 square foot cell states an Eighth Amendment claim.

86.   Defendants Collier and Davis actions has violated Walker's Eighth Amendment right because their failure to regulate the Unit's temperature has casued Walker to be exposed to excessive heat and cold temperature.

87.   The actions of Defendants Catoe, Cooper and Richardson failure to provide safe drinking water, non-contaminated food, adequate living space, relief from extreme heat and cold conditions, adequate sleep, protection from overcrowded shower which incites PREA violations, and safe living areas.

88.   The failure of the above-named defendants to provide Walker safe confinement without risks and dangers to his mental and physical health violates the Eighth and Fourteenth Amendment of the United States Constitution.

## RELIEF REQUESTED

THEREFORE, Plaintiff Johnny Lee Walker request that the Court grants the following relief:

A. Issue a declaratory judgment stating that:

1.   The above-named defendants have violated Walker's rights to humane treatment and have placed him at risks and dangers of physical and mental injuries.

B. Issue an injunction ordering Defendants, as named, to:

1.   Defendants  Collier and Davis implement policies requiring the mandated living space per inmate, or single house.

2.   Defendants Collier and Davis provide a cooling system that keeps the prisoner's living areas between 80°F to 88°F at all times.

3.   Defendants Catoe, Cooper and Richardson obey all current policies in place that protects the health and safety of Walker.

4.   Defendants Catoe, Cooper and Richardson ensure that Walker's do not suffer mental and physical injuries by providing the following:

a. Safe drinking water because the drinking water provided contains sewage and waste impuritents

b. Adequate cooling system to reduce the 100°F plus temperature in the living areas.

c. Provide adequate necessities and bedding linen during the cold winter months.

d. Food service areas that is not infested with roaches, harmful insect, birds, wet floors and food dropping on wet floors, sewage water in dining area,

e. Food service area where Walker is not subjected to food-borne pathogens and bacterias, cross contaminated foods that could result in Walker being infected with viruses and/or diseases.

f. Walker can shower without being in a shower area that is not excessively crowded, a shower that shields Walker's privacy and preclude him from being a victim of PREA.

C. Award compensatory damage of $10,000 against ecah defendants jointly and severally for physical and emotional injuries and the failure to protect Walker from these injuries.

D. Award Punitive damages of $5,000 against each defendant.

E. Attorney fees for the filing of this complaint.

F. Appointment of counsel to litigate matter of complex issues and expert testimony.

G. Grant such any and all other relief as it may appear that Walker is entitled.

Respectfully Submitted,

Johnny Lee Walker
2661 FM 2054
Tennessee Colony, TX 75884

Pro Se Litigant

12

## INMATE DECLARATION

I, Johnny Lee Walker TDCJ# 1215501, am presently incarcerated at the H.H. Coffield Unit in Anderson County, Texas, of the Texas Department of Criminal Justice - Institutional Division, do declare under penalty of perjury that the above foregoing document is true and correct.

Executed on this the 5th day of January 2018.

_Johnny Lee Walker_
Johnny Lee Walker

## CERTIFICATE OF SERVICE

I, Johnny Lee Walker, certify that a copy of the foregoing document have been forwarded via U.S. Mail on this the 5th day of January 2018, by placing it in the prison system mailbox.

_Johnny Lee Walker_
Johnny Lee Walker

13



Office of the Clerk
U.S. District Court
Eastern District of Texas
211 W. Ferguson, Rm 106
Tyler, Texas 75702

January 5, 2018

RE:Johnny Lee Walker v. Lorie Davis, et al
   Civil Action No. 6:17-cv-166

Dear Clerk:

   Please find enclosed a copy of PLAINTIFF'S AMENDED PLEADING TO DE-
FENDANT'S MOTION FOR A MORE DEFINITE STATEMENT to be filed in the
above reference cause.

   Know that your time in the above matter is greatly appreciated.


Sincerely,



Johnny Lee Walker
TDCJ# 1215500
Coffield Unit
2661 FM 2054
Tennessee Colony, Texas 75884


cc: filed

Johnny Lee Walker #1215501
TDCJ - Coffield Unit
2661 FM 2054
Tennessee Colony, TX 75884

"Legal Mail"

Office of the Clerk
U.S. District Court
Eastern District of Texas
211 W. Ferguson, Rm 106
Tyler, Texas 75702

