IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNNY LEE WALKER | § | |
| v. | § | CIVIL ACTION NO. 6:17cv166 |
| LORIE DAVIS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Johnny Lee Walker, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action complaining of alleged violations of his constitutional rights.  The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.  The named defendants are TDCJ-CID Director Lorie Davis, TDCJ Executive Director Bryan Collier, Wardens Jerry Catoe, Jeffrey Richardson, and Patrick Cooper of the Coffield Unit, and the Texas Board of Criminal Justice.

## I. Background

Walker's amended complaint is the operative pleading in the lawsuit. Clark v. Tarrant County, Texas, 798 F.2d 736, 740 (5th Cir. 1986) ( amended complaint entirely supersedes and takes the place of an original complaint).

In his amended complaint, Walker states that Collier, Davis, Catoe, Cooper, and Richardson have caused him to suffer from severe mental and physical health problems as a result of being double-celled in a 45 square foot cell.  He contends that he is unable to protect or defend himself from violent, aggressive, or mentally unstable cell mates and that the double-celling places him at risk of disease from infected cell mates.  This double-celling contributes to disciplinary offenses,

1

psychiatric commitments, and suicidal tendencies, as well as discomfort and fear, if a prisoner is housed with a PREA [Prison Rape Elimination Act] violator or a homosexual.  He states that he personally has suffered from increased blood pressure, aggressive behavior, and psychological withdrawals.

Every six months, during the unit lockdowns, Walker complains that he is housed for 24 hours a day in this 45 square foot cell with a cellmate.  He states that he suffers from chronic hypertension, extreme heat restrictions, acute left heel and achilles tendon damage, a twice-broken arm, and a gunshot wound to his left leg, making him more vulnerable to assaults.  Walker cites <u>Ruiz v. Estelle</u>, 679 F.2d 1115 (5th Cir. 1982) as stating that double-celling should be eliminated, but complains that the defendants are aware of this ruling and continue to enforce the unconstitutional acts.

Next, Walker complains that the Coffield Unit no longer has designated sleep hours.  Even though the sleep hours are supposed to be 10:30 p.m. to 6:30 a.m. on weekdays and 1:30 a.m. to 6:30 a.m. on weekends, activities go on through the night, including mail-call and issuance of lay-ins between 10 p.m and 11:30 p.m., bed book count between 12:00 a.m. and 1:00 a.m., linen exchange on Thursdays between 1 and 2 a.m., chow call, pill window, medical lay-ins and outgoing chains between 2:30 a.m. and 4 a.m., population shower and vocation between 3:30 a.m. and 5 a.m., field force and recreation turnout between 5:30 a.m. and 6 a.m., and dayroom time, lay-ins, passes, and work call between 6:30 a.m. and rackup.  According to Walker, some of these activities result in the opening and slamming of cell doors during the night, causing the cell front and walls to vibrate.

Walker complains that the sleep deprivation causes him to suffer constant headaches, dizziness, fatigue, a weakened immune system, and he "walks about in a zombie-like state all day." He has complained to Catoe, Cooper, and Richardson, but asserts that they only created more policies to deprive him of rest; however, he does not identify any such policies.

Walker next asserts that the Coffield Unit's shower has approximately 75 shower heads, but only about 37 of them are operable.  There are 200 to 250 inmates at a time in the shower, and the

security staff is inadequate to watch for improper activities.  There are no partitions to provide privacy and inmates stand all around him while he showers.  He states that he has witnessed PREA violations against other inmates and argues that he is subjected to dangers daily.  Walker claims that 40 percent of the Coffield Unit population consists of either sex offenders or homosexuals, and he believes he is at risk from both groups.

Walker complains that there are no accessible public toilets in the general population living areas.  He claims that hourly ingresses and egresses are required by policy, which would allow him to access his toilet in the housing area, but these are not conducted.  As a result, he states he can be trapped in the dayroom or hallway for hours without access to a toilet.  Walker claims that this causes him to suffer in agonizing pains because he has no means of bodily release, and when he asks to be allowed to use a toilet, he is told to "hold it" or to find a corner in the dayroom.  If he relieves himself on the floor or pursues his right to access a toilet, Walker states that disciplinary action can be taken against him, so he must soil his pants or squat in the corner like an animal.  He contends that the security staff finds his suffering and humiliation "entertaining" and claims that these acts have been going on for years.

Walker contends that Collier and Davis are "aware of the ongoing structural problems that plague the Coffield Unit and have done nothing to correct these numerous deficiencies that threaten inmates' mental and physical health."  He explains that the outer housing walls at the unit consist of small window panes from floor to ceiling, and the cell fronts consist of bars covered by iron grates painted black which face the window paned wall.  The sun shines into the cells and heats the front wall and iron grate, leaving no escape from the heat.  He states that an unidentified "expert" has determined that the small circular fan provided by the commissary simply stirs the hot air throughout the cell, causing the heat to be evenly distributed.

Walker states that he has hypertension and takes heat-sensitive medication, causing him to suffer unbearable pains and risks of heart attack, stroke, or death.  The only remedy suggested by the Defendants is that he drink lots of water and be allowed to visit a respite area for five minutes,

but the water is contaminated and the respite area breaks are not honored by the security staff.  The one fan provided does little or no good and the ventilation is poor and inadequate.  Walker believes that the deaths occurring at the Coffield Unit during the summer are heat-related, but written up under other causes.

In the winter, Walker states that hundreds of the window panes are not sealed, meaning that cold air seeps into the living areas.  The heat system barely puts out heat when it is operational and the venting faces the windows, not the living areas.  The only items provided by Catoe, Cooper, and Richardson are a "tattered and poorly insulated jacket and tattered blanket." He states that he sleeps in all clothing, necessities, and linen provided, and is uncomfortably cold.  As a result of the cold, Walker states that he suffers severe aches in his joints, trembling, shaking, and overall discomfort.

Next, Walker states that the chow hall is one of the filthiest and most unsanitary places at the Coffield Unit.  Catoe, Cooper, and Richardson know about this and the matter has been brought to the attention of Collier and Davis, but no corrective action has been taken.  Walker states that roaches, spiders, and birds infest the chow hall year round and these conditions are known by inspectors for the American Correctional Association, but the inspectors "continue to waive these infractions."

Walker further alleges that the eating utensils are chipped, broken, and peeling and that there are "food-borne pathogens" trapped in the damaged areas from which he is forced to eat.  He contends that he can see "bacteria waste" and trapped food under the peeling and in the broken areas of the utensils.  He states that the utensils are not washed at the mandatory temperature, with inadequate detergent, and are not allowed to drip dry before use.  The contaminated residue waste of the washing is mixed with the food he eats and the food service workers do not wear the proper headgear and gloves.

In addition, Walker states that he must tread through "sewage water" daily to receive his tray and must sit in the filth and dropping left by the inmates before him.  He contends that he must fight flies and gnats and avoid being stung by wasps and bees while eating.

According to Walker, the water at the Coffield Unit is contaminated with coliform bacteria. He states that multiple inmates have been infected with a bacteria called H. Pylori as a result, but does not indicate that he has been diagnosed with this bacteria nor show how he knows that other inmates' diagnoses resulted from the water.  Walker notes that he drink a lot of water during periods of heat.   He contends that he has suffered digestive problems, vomiting, fever, cold sweats, and "unexplainable knots and rashes," but he does not specifically connect these conditions to the water nor show how he knows that the water is contaminated with coliform bacteria.

Walker maintains that the building structure is collapsing in areas, resulting in cracks on the floors, walls, and ceiling as well as leaks in the roof.  He claims that there are black pores and fungi in the living areas, mostly in the cracks on the ceiling, and all of the metal fixtures in the living and housing areas are decayed and rusty, which exposes him to these "metal poisonings."

Walker further complains that there are no climbing implements to allow safe access to the top bunk, stating that he has injured himself numerous times trying to get up to or down from his bunk.  He asserts that he is in constant danger from prisoners addicted to K-2 (synthetic marijuana) due to violent behavior and unprovoked attacks.   During warm months, Walker states that his housing area is infested with birds, vermin, and spiders, and that he is at risk of being bitten by spiders all year.  If he is having a confrontation with his cell mate and asks for a housing change, his request is denied and a confrontation is encouraged by the officers.

For relief, Walker asks for an injunction requiring single celling, a cooling system keeping the living area between 80 and 88 degrees at all times, obedience to all policies currently in place protecting his health and safety, provision of safe drinking water, an adequate cooling system, adequate bedding and necessities during winter, food service areas which do not have roaches, harmful insects, birds, wet floors, food droppings, sewage water in the dining areas, and food-borne pathogens, and a shower area which is not overly crowded and shields his privacy.  He also seeks compensatory and punitive damages, a declaratory judgment, appointment of counsel, and attorneys' fees.

**II. The Motion to Dismiss and the Response**

After Walker filed his amended pleading, the Defendants filed a motion to dismiss.  This motion states that Walker does not claim any injury for excessive overcrowding in the showers, lack of toilets in the dayroom, chow hall contamination, or unsafe living and housing areas.  The Defendants also assert that Walker's allegations are conclusory and do not provide any specific dates for the alleged Eighth Amendment violations.

The Defendants contend that Walker sets out no allegations against the Texas Board of Criminal Justice.  They assert that they are not liable under a theory of *respondeat superior* and that Walker does not detail any personal involvement or causal connections by any named Defendant with particular alleged violations.  Instead, the Defendants claim that Walker provides only conclusory allegations of deliberate indifference, which are insufficient to show personal liability or to set out a claim under the Eighth Amendment.  With regard to the claims of excessive overcrowding in the showers, lack of toilets in the dayroom, chow hall contamination, or unsafe living and housing areas, the Defendants state that Walker failed to allege any injury and thus cannot maintain a claim.

In his response to the motion, Walker argues that the Texas Board of Criminal Justice is the final policy-maker and is the moving force behind the violations which he is suffering.  He states that he is seeking injunctive relief from the Board.

Walker further argues that the Defendants are liable under *respondeat superior* "if they failed to properly train and oversee, give orders to and discipline their staff after learning [of] these officials' wrongful acts."  He asks if the Defendants are not responsible for the allegedly inhumane conditions, then who is? He adds that "the defendants [are] aware of the extreme temperature conditions and the deteriorating building structure but continue in custom and practice of housing Walker and all inmates in these unsafe living areas while knowing the dangers and risks."

According to Walker, the red brick units of TDCJ are in a "rapid declining stage" and are inadequate to "safe house and guarantee the safety and health of its occupants." He cites cases from other units concerning contaminated water and heat exposure, stating that the supervisors in those cases were not allowed to escape their responsibilities. Walker goes on to state that he has suffered unspecified physical injuries as a result of excessive heat in the summer and cold in the winter, drinking contaminated water and eating contaminated food, sleep deprivation, inadequate living space, and unsafe housing. He asserts that the supervisors are aware of the complaints because he filed grievances which afforded them the opportunity to correct the conditions complained of.

After stating that he has talked to an inmate on the Robertson Unit who stated that he received two blankets and a set of thermals, even though it is not as cold at the Robertson Unit as at the Coffield Unit, Walker states that "it is like being in an oven during the hot months and being in a freezer during the winter months." He complains that the Defendants have taken no corrective action.

Instead, Walker asserts that the Defendants Catoe, Cooper, and Richardson walk the halls daily and have been made known of these problems by Walker and other inmates, but have been deliberately indifferent. He asserts that he has been subjected to these conditions of confinement at all times and that the problems and violations have been ongoing for years.

Walker contends that he has suffered harm for his injuries of inadequate living space, sleep deprivation, no public toilets, contaminated drinking water, and extreme heat conditions. He further states that he is in "constant dangers and health risks daily" with regard to the overcrowding, chow hall contamination, and unsafe housing. He maintains that he places his life at risk every time he enters the shower from sexual assaults and incurable viruses, his consumption of "food-borne pathogen bacteria" three times a day which has possibly caused irreversible harm and unknown diseases, and he has injured himself multiple times trying to get to his bunk.

## III. Legal Standards and Analysis

### A. General Standards on Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. Severance v. Patterson, 566 F.3d 490, 501 (5th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. Id. at 678.

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. Id.; see also Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. Chhim v. University of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. Id. (citing Fed. R. Civ. P. 8(a)(2)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

B. Supervisory Liability

Walker names as defendants supervisory officials, including the Executive Director of TDCJ, Bryan Collier; the Director of TDCJ-CID, Lorie Davis; and the wardens of the Coffield Unit, Jerry Catoe, Jeffrey Richardson, and Patrick Cooper.  He also sues the Texas Board of Criminal Justice itself.

The Fifth Circuit has held that under §1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.  However, a supervisor may be held liable if there exists (1) his personal involvement in a constitutional deprivation, (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, or (3) if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987); Terry v. LeBlanc, 479 F.App'x 644, 2012 WL 3496399 (5th Cir., August 15, 2012).  Conclusory allegations of the creation or existence of a policy or custom are insufficient to establish supervisory liability.  Rivera v. Salazar, 166 F.App'x 704. 2005 WL 3588443 (5th Cir., December 30, 2005), citing Thompkins and Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).

The Supreme Court has stated that the term "supervisory liability" in the context of a §1983 lawsuit is a misnomer because each government official, his or her title notwithstanding, is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677.  The Supreme Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. Id.  Following this precedent, the Fifth Circuit held that a prison supervisor was not liable since he was not personally involved in an incident. Sterns

v. Epps, 464 F.App'x 388, 2012 U.S. App. LEXIS 5678, 2012 WL 911889 (5th Cir., March 19, 2012).

The Texas Board of Criminal Justice is an agency of the State of Texas and is thus shielded by the Eleventh Amendment from being sued in its own name.  McGrew v. Texas Board of Pardons and Paroles, 47 F.3d 158, 161 (5th Cir. 1995).

C. Application of the Standards to Plaintiff's Complaint

1. Double-celling

Walker complains at great length about being double-celled, saying that it was held unconstitutional in the 1982 decision of Ruiz v. Estelle, 679 F.3d 1115 (5th Cir. 1982), *modified in other respects* 688 F.2d 266 (5th Cir. 1982).  In fact, however, the Fifth Circuit vacated the district court's holding that double-celling was cruel and unusual punishment.  Id. at 1148, 1150-51, 1165.

The Supreme Court has specifically held that the double-celling of prisoners, even in relatively small cells, does not amount to cruel and unusual punishment.  Rhodes v. Chapman, 452 U.S. 337, 347–50, 101 S.Ct. 2392, 69 L.Ed.2d 58 (1981); *see also* Duncan v. Puckett, 91 F.3d 137, 1996 U.S. App. LEXIS 44395, 1996 WL 400039 (5th Cir., May 27, 1996) (upholding dismissal as frivolous of inmate's complaint of being placed in a single cell with another prisoner); Lineberry v. U.S., civil action no. 5:08cv72, 2009 U.S. Dist. LEXIS 15293, 2009 WL 499763 (E.D.Tex., February 27, 2009, *appeal dismissed as frivolous* 436 F.App'x 293, 2010 U.S. App. LEXIS 11269, 2010 WL 7114190 (5th Cir., June 3, 2010) (rejecting complaint of double-celling at the Federal Correctional Institution at Texarkana); Barber v. Quarterman, civil action no. 6:09cv238, 2010 U.S. Dist. LEXIS 33349, 2010 WL 1417650 (E.D. Tex., Apr. 5, 2010), *appeal dismissed* 437 F.App'x 302, 2011 U.S. App. LEXIS 16111, 2011 WL 3313211 (5th Cir., August 3, 2011) (citing Parker v. Currie, 359 F.App'x 488, 2010 U.S. App. LEXIS 92, 2010 WL 10924 (5th Cir. Jan. 4, 2010) (inmate desired a single cell but was assigned to general population; no constitutional liberty interest infringed)).

The Fifth Circuit has stated that overcrowding of persons in custody is not *per se* unconstitutional. <u>Collins v. Ainsworth</u>, 382 F.3d 529, 540 (5th Cir. 2004), *citing* <u>Rhodes</u>, 452 U.S. at 347-50. While Walker's pleading may depict an environment which is uncomfortable, unpleasant, and unquestionably stressful, he has not shown it is one which is unconstitutional. <u>McClure v. TDCJ-CID</u>, civil action no. 5:10cv66, 2011 U.S. Dist. LEXIS 20560, 2011 WL 806227 (E.D.Tex., January 31, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 20551, 2011 WL 773290 (E.D.Tex., March 1, 2011), *aff'd* 459 F.App'x 348, 2012 U.S. App. LEXIS 1232, 2012 WL 177369 (5th Cir., January 20, 2012); *see also* <u>Cupit v. Jones</u>, 835 F.2d 82, 84 (5th Cir. 1987) (no right to a stress-free environment while incarcerated). Walker has failed to state a claim upon which relief may be granted in this regard.

2. Sleep Deprivation

Walker complains that he is unable to get five hours of uninterrupted sleep because of activities which go on throughout the night, such as mail call, the issuance of lay-ins, bed book count, linen exchange on Thursdays, chow call, pill window, medical lay-ins and outgoing chains, population shower and vocational turnout, field force and recreation turnout, dayroom time, lay-ins, passes, and work call.

In <u>Walker v. Nunn</u>, 456 F.App'x 419, 2011 U.S. App. LEXIS 26073, 2011 WL 6934496 (5th Cir. 2011), the plaintiff Stephen Walker complained that he was denied adequate sleep while confined in TDCJ, based in part on the prison schedule of operations. The evidence showed that the prison unit had to operate on a 24-hour basis in order to perform the tasks required to keep the prison functioning. The Fifth Circuit held that the structure of the prison schedule was reasonably related to legitimate penological interests and determined that there was no Eighth Amendment violation. The court also held that while the prisoner sued supervisory officials complaining of policies of depriving prisoners of sleep and ignoring staff misconduct, no evidence was offered of such policies. *See also* <u>Chavarria v. Stacks</u>, 102 F.App'x 433, 2004 U.S. App. LEXIS 14945, 2004 WL 1485076 (5th Cir., July 20, 2004) (lights illuminating the plaintiff's cell 24 hours a day, making it impossible

11

for him to sleep, did not set out an Eighth Amendment violation because he did not show that the claimed deprivation was unnecessary and wanton).

The Eighth Amendment forbids the infliction of cruel and unusual punishment.  The indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities.  Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989).  The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.  Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981).  Similarly, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience.  Wilson, 878 F.2d at 849.

The infliction of punishment involves a culpable state of mind.  The Supreme Court has explained that "the infliction of punishment is a deliberate act meant to chastise or deter.  This is what the word means today; it is what it meant in the eighteenth century.... [I]f [a] guard accidentally stepped on a prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word, whether we consult the usage of 1791, or 1868, or 1985."  Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2325 (1991), *citing* Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986).

In Garrett v. Thaler, 560 F.App'x 375 (5th Cir., April 1, 2014), the Fifth Circuit stated that sleep deprivation could potentially constitute a viable Eighth Amendment claim because sleep amounts to one of life's basic necessities.  In so holding, the Fifth Circuit pointed out that "we emphasize that we do not more than determine that Garrett has alleged a non-frivolous claim of an Eighth Amendment violation.  We do not intimate that Garrett has established a claim upon which relief can be granted."

In the present case, by contrast, Walker has failed to state a claim with regard to an Eighth Amendment violation because he does not allege a culpable state of mind on the part of any of the

Defendants.   Even taking his allegations as true, he offers nothing to suggest that the sleep disturbances of which he complains are done in an unnecessary or wanton manner in order to prevent him from sleeping rather than resulting from activities necessary to keep a community of almost 4,000 persons functioning.   The Coffield Unit is the largest single unit in the Texas prison system, with a maximum capacity of 3,818 inmates plus another 321 in the trusty camp.  *See* http://www.tdcj.state.tx.us/unit_directory/ co.html.  As in Walker v. Nunn, which involved the much smaller Jordan Unit, a 24 hour operation schedule is necessary to keep the prison functioning, and it is not clear how these operations could be eliminated without a large-scale disruption if not a complete revamping of the operations of the prison.   Walker has failed to state a claim upon which relief may be granted in this regard.

### 3. Crowded Showers

Walker complains that the showers are overcrowded and lack partitions to protect privacy. He asserts that Wardens Catoe, Cooper, and Richardson have "shown deliberate indifference to Walker['s] health and safety by creating policies that place him vulnerable to assaults of an assailant's predatory nature while showering."  He does not identify any policies nor state that he has suffered any harm as a result of this circumstance, although he indicates that he has seen other inmates get assaulted and he believes that he is in danger on a daily basis.

Overcrowded showers are not *per se* a constitutional violation.   Hazel v. Bell, civil action no. 9:08cv216, 2010 U.S. Dist. LEXIS 26267, 2010 WL 1038743 (E.D.Tex., January 8, 2010), *Report adopted at* 2010 U.S. Dist. LEXIS 26238, 2010 WL 1038733 (E.D.Tex., March 18, 2010), *citing* Rhodes, 452 U.S. at 347.  Furthermore, Walker did not allege an injury as a result of shower overcrowding and thus cannot prevail on this claim.  *See* Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998).

The Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation.  Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir.

1995).  The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety.  Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.  In order to show deliberate indifference, the plaintiff must show the defendant official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer, 511 U.S. at 837-38.  An official's failure to alleviate a significant risk which he should have perceived, but did not, does not amount to the infliction of punishment.  Id.

The mere generalized knowledge that some prisoners may be dangerous is not enough to support a finding of deliberate indifference.  Even general knowledge about a particular inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.  Van Williams v. Samaniego, civil action no. EP-05-CA-491, 2007 WL 9701460 (W.D.Tex., February 22, 2007), *citing* Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003).  Walker's vague allegation of unspecified "policies" with regard to the shower and his generalized and inchoate allegations of possible danger are insufficient to show that the Defendants are acting with deliberate indifference to his safety.  This allegation fails to state a claim upon which relief may be granted.

4. Toilets in the Dayroom

Walker contends that the Defendants are aware that there are no publicly accessible toilets in the dayrooms, but the required hourly ingresses and egresses are not conducted so as to allow him access to the toilets in the housing area.  He states that if he asks to be allowed to use the toilet, he is told to hold it or to find a corner in the dayroom.  Walker indicates that it is the floor officers, not the Defendants, who are in charge of conducting ingresses and egresses and who tell him to "hold it or find a corner in the dayroom."

Walker does not allege that the named Defendants were personally involved in a constitutional deprivation regarding the toilets, that wrongful conduct by any of them was causally connected to a constitutional deprivation, or that any of the named Defendants implemented a constitutionally deficient policy which was the moving force behind a constitutional violation.  On the contrary, Walker concedes that the Defendants have established policies for hourly ingresses and egresses from the dayroom which would allow him access to the toilet in the housing area; however, he states that these policies are not followed by the floor officers, whom he does not sue.  The supervisors are not vicariously liable for the actions of their subordinates.  Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001).  Walker has failed to state a claim upon which relief may be granted against the named Defendants in the case.

5. Heat

Walker complains that the way the Coffield Building is built, with windows on the outer wall,  allows the sun to shine directly into the cells and create an environment of extreme heat.  He states that "Defendant Collier and Davis are aware of the ongoing structure problems that plagues [sic] the Coffield Unit and have done nothing to correct these numerous deficiencies that threatens [sic] inmates' mental and physical health.  Defendants Catoe, Cooper, and Richardson has [sic] shown deliberate indifference to Walker's mental and physical health by the inhumane conditions Walker must suffer each year for months at a time."

Walker describes how the Coffield Unit walls are made up of windows and states that the sun shines into the cells and there is no escape from the heat.  He states that "experts," whom he does not identify, have determined that the fans provided by the commissary only stir the hot air around.  The heat has caused him to suffer "unbearable pains and risks of heart attacks or strokes and possibly death."  He also complains of "dizziness, dehydration, muscle cramps and spasms, irregular heartbeats, memory lapses, and migraine headaches."  The Defendants have instructed the prisoners to drink a lot of water and visit the "respite areas," but Walker contends that the drinking

water is contaminated and the security staff does not honor the respite areas." There is a fan in the living area, but Walker states that it does little good.

The Fifth Circuit has stated that without the requisite proof of both subjective and objective components of an Eighth Amendment violation, merely uncomfortable heat in a prisoner's cell does not reflect a basic human need that the prison has failed to meet and thus is not constitutionally suspect. Ball v. LeBlanc, 792 F.3d 584, 592 (5th Cir. 2015), citing Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995). In this case, Walker's vague and general allegations of deliberate indifference are insufficient to state a claim upon which relief may be granted. According to his pleadings, the Defendants have provided a fan in the living area as well as respite areas. He also states the Defendants have instructed prisoners to drink a lot of water during periods of heat.

The fact that the fan may not be as effective as Walker would like does not itself show that the Defendants were deliberately indifferent. Walker asserts that the security staff impedes access to the respite areas, but he does not show any personal involvement by any of the named Defendants with this alleged denial of access to the respite areas. His complaint about the water quality will be addressed below; in any event, Walker does not allege that the Defendants tried to limit the water available to him as a measure for relief from the heat.

Walker's allegations with regard to the heat consist of no more than labels and conclusions and amount to only naked assertions devoid of further factual enhancement. He pleads facts merely consistent with or creating a suspicion of the Defendants' liability, offering no more than a sheer possibility of unlawful conduct. Conclusory claims of excessive heat and inadequate ventilation, without more, fail to implicate a federal right. See Clark v. Gusman, 2012 WL 1825306, *6 (E.D. La. Mar. 29, 2012) (citing Johnson v. Thaler, 1999 WL 1131941 *1 (5th Cir., Nov. 12, 1999) (noting that plaintiffs' "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); Parker v. Smith, 1994 WL 198944 *2 (5th Cir. May 6, 1994) (dismissing as frivolous the plaintiff's claim that "the ventilation system in the Smith County jail [was]

inadequate.") As such, Walker has failed to state a claim upon which relief may be granted with respect to his allegations of excessive heat.  Iqbal, 556 U.S. at 678.

6. Cold

Walker asserts that the windows are not properly sealed during the winter and the cold air seeps into the housing areas.  He claims that heating system barely works and the vents face the windows, not the cells.  Walker maintains that the only items provided by the Defendants Catoe, Cooper, and Richardson are a "tattered and poorly insulated jacket and tattered blanket," which are not sufficient to protect him from the cold, even though he sleeps in all clothing, necessities, and linen provided by the Defendants.

Other than the conclusory allegation that the Wardens "provided" the jacket and blanket, Walker offers nothing to suggest that any of the named defendants had any personal involvement with exposing him to the cold.  Walker generally asserts in his response that Catoe, Cooper, and Richardson "walk these halls daily and have been made known of these problematic violations by Walker and numerous inmates," but it is not clear he is talking about the cold and he does not specify to which alleged violations he refers.  The grievances he attaches to his original complaint make no mention of the cold.

In Havard v. Jones, civil action no. 3:09cv107, 2011 WL 5835110 (S.D.Miss., November 21, 2011), the plaintiff complained that the cold weather clothing provided to him at the South Mississippi Correctional Facility was inadequate, stating that he wrote to the warden and requested long underwear but was denied.  The district court reasoned as follows:

> In order to state an Eighth Amendment claim based upon unconstitutional prison conditions, an inmate must allege conditions which pose a substantial risk of serious harm to his health or safety.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Furthermore, in order to hold a prison official liable for unconstitutional conditions, a plaintiff must establish subjective deliberate indifference on the official's part, i.e., that he was aware of the facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and that he actually drew the inference.  Id. at 837; see also Herman v. Holiday, 238 F.3d 660, 664 (5th Cir.2001).  An allegation that Plaintiff wrote Defendant King a letter requesting long underwear, and that King denied the request, falls far short of this standard.  For this reason, Plaintiff's claims regarding inadequate clothing will be dismissed.

Similarly, Walker's pleadings fail to allege subjective deliberate indifference on the part of any of the named Defendants.  *Compare* Withrow v. Heaton, 275 F.3d 42, 2001 WL 1223630 (5th Cir.. September 24, 2001) (deliberate indifference sufficiently alleged where officers wore heavy coats and jackets but forced inmates to walk to the shower wearing only underwear); Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999) (warden personally observed prisoners being subjected to cold overnight temperatures but ordered that it continue).  Walker does not plead any facts showing involvement by any of the named Defendants with his alleged exposure to the cold, offering only naked assertions devoid of further factual enhancement or generalized and conclusory assertions that are insufficient to show the requisite subjective knowledge of risk or state an Eighth Amendment claim regarding the conditions of his confinement.  *See* generally Thomas v. Owens, 345 F.App'x 892 (5th Cir. 2009).

The Supreme Court has explained that even prison officials who actually know of a substantial risk to inmate health or safety may be found free from liability if they respond reasonably to the risk, even if the harm was not averted.  Farmer, 511 U.S. at 844-45.  Walker's pleadings show he was issued a jacket and a blanket for protection from the cold.  The fact these items were not as effective as he would like does not show deliberate indifference.  Consequently, Walker has failed to state a claim upon which relief may be granted with regard to the allegations of exposure to excessive cold.

7. Chowhall Conditions

Walker asserts that the chow hall is filthy and overrun with birds and insects, the utensils are broken and carry food-borne pathogens, and the utensils are not washed at the mandatory temperature and without adequate detergent.  Walker does not allege that he has ever become ill as a direct result of these conditions, despite eating meals and drinking water over an extended period of time.  Walker contends that the conditions in the chow hall have been observed by Catoe, Cooper, and Richardson and have been brought to the attention of Collier and Davis, but nothing has been done.

18

Prison and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Brown v. Canteen, Inc., civil action no. 09-cv-1549, 2009 U.S. Dist. LEXIS 112677, 2009 WL 4506867 (W.D. La. Dec. 3, 2009), *Report adopted* December 3, 2009 (docket no. 14), (*quoting* French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986)); Green v. Ferrell, 801 F.2d 765 (5th Cir. 1986); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).

Although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, civil action no. 09-2823, 2009 U.S. Dist. LEXIS 120097, 2009 WL 5178316 (E.D. La. Dec. 23, 2009); *see also* Talib v. Gilley, 138 F.3d 211, 215 (5th Cir.1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d at 849 & n.5 (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel.")  Furthermore, courts have held that without an allegation of resulting harm, complaints regarding food service practices "simply are not of a constitutional dimension," even where the plaintiff is requesting injunctive relief.

In this case, Walker does not allege that he has ever suffered harm or illness as a result of these allegedly unsanitary conditions. *See, e.g.*, Flowers v. Dent, 21 F.3d 1109, 1994 WL 171707 (5th Cir., Apr. 29, 1994) (affirming dismissal as frivolous of complaint asserting that inmate did not receive adequate food and the kitchen facilities were unsanitary, where no harm was shown); *see also* Northup v. Bell, civil action no. 6:11cv222, 2012 U.S. Dist. LEXIS 95060, 2012 WL 2814307 (E.D. Tex. June 12, 2012), *Report adopted at* 2012 U.S. Dist. LEXIS 95069, 2012 WL 2813973 (E.D.Tex., July 9, 2012); Encalade v. Stacks, civil action no. 9:04cv214, 2006 U.S. Dist. LEXIS 40945, 2006 WL 1582468 (E.D. Tex. May 30, 2006), *appeal dismissed* (rejecting claim of

unsanitary food service and procedures where inmate failed to show anything more than a general complaint that his stomach hurt).

In Groves v. Gusman, civil action no. 09-7431, 2-11 U.S. Dist. LEXIS 41493, 2011 WL 1459775 (E.D. La., Mar. 4, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 4154, 2011 WL 1463612 (E.D. La., Apr. 15, 2011) the district court held that "a minor sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation," particularly where inmate alleged no harm. *See also* Jackson v. Griffith, civil action no. 1:93-cv-424, 1995 U.S. Dist. LEXIS 516, 1995 WL 21939 (E.D.Tex. Jan. 10, 1995), *Report adopted at* 1995 U.S. Dist. LEXIS 22831, 1995 WL 313655 (E.D .Tex. Feb. 8, 1995) (claim regarding unsanitary food trays resulting from overcrowded conditions dismissed as frivolous).

Finally, mere negligence on the part of the prison officials in the way they manage the food services does not amount to a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993). Walker has failed to state a claim upon which relief may be granted in this regard.

8. Contaminated Water

Walker states that Collier, Davis, Catoe, Cooper, and Richardson are "well aware of the ongoing contamination in the Coffield Unit's drinking water supply and they are aware [that] the inmates are exposed to the risks and dangers." He contends that the Coffield Unit's water supply is contaminated with coliform bacteria, which has caused multiple inmates at the unit to become infected with H. pylori. Walker does not allege that he personally has suffered any harm as a result of the alleged water contamination.

Nor does Walker offer any substantiation for his claim that the water is contaminated. His mere personal belief that the water at Coffield Unit is contaminated is not sufficient to support a claim before this court. *See* Rougley v. GEO Group, civil action no. 2:10-cv-1094, 2011 U.S. Dist. LEXIS 154995, 2011 WL 7796488 (W.D. La. Nov. 7, 2011), *Report adopted at* 2012 U.S. Dist. LEXIS 63389, 2012 WL 1596709 (W.D. La., May 2, 2012) (dismissing an inmate's claim as frivolous where the inmate provided only conclusory assertions, without supporting facts, that the

20

food served at the prison was contaminated). *See also* <u>McIntosh v. Camp Brighton</u>, civil action no. 14-cv-11327, 2014 U.S. Dist. LEXIS 54652, 2014 WL 1584173 (E.D. Mich., Apr. 21, 2014) (dismissing an inmate's claim as frivolous where her allegations of contaminated water were conclusory and she failed to "set forth any specifics, such as . . . why she believe[d] the drinking water was contaminated.") Walker has failed to state a claim upon which relief may be granted in this regard.[1]

### 9. Unsafe Housing Areas

Walker complains that the "building is collapsing" leading to cracks in the floors, walls, and ceilings and leaks in the roof.  He also complains that there is mold and exposed rust, there are no ladders to help inmates get to the top bunk, and there are insects, birds, and spiders in the housing area.  He also states that if he has a confrontation with his cell mate, the request for a cell change is denied.

The mere fact that the roof may have leaked in some places does not without more show a constitutional violation, particularly in the absence of any facts showing the extent or location of the leaks.  <u>Davies v. Fusilier</u>, 252 F.3d 434, 2001 WL 360709 (5th Cir., March 15, 2001) (dismissing claim by prisoner that for five months, he was subjected to the daily stench of toilets backed up with human waste and the walls and roof of his cell leaked dirty rainwater); <u>Waller v. Ward</u>, civil action no. 3:16cv1168, 2016 U.S. Dist. LEXIS 173161, 2016 WL 7235832 (W.D.La., October 19, 2016), *Report adopted at* 2016 U.S. Dist. LEXIS 173154, 2016 WL 7240152 (W.D.La., December 14, 2016).

Similarly, the fact that there is exposed rust and mold does not without more give rise to a constitutional violation.  <u>Allen v. St. Tammany Parish</u>, civil action no. 17-4091, 2018 U.S. Dist.

---

[1]Walker argues that he does not have to get sick before he can complain about the allegedly contaminated water.  The Supreme Court has stated in dicta that "we would think that a prison inmate also could complain about demonstrably unsafe drinking water without waiting for an attack of dysentery." <u>Helling v. McKinney</u>, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  In the present case, the water is not "demonstrably unsafe" because Walker offers nothing beyond his own opinion that it is contaminated, nor has he alleged facts from which deliberate indifference on the part of the Defendants may be inferred.  The <u>Helling</u> dicta is thus not applicable to his case.

LEXIS 12254, 2018 WL 558503 (E.D.La., January 2, 2018), *Report adopted at* 2018 U.S. Dist. LEXIS 11337, 2018 WL 537495 (E.D.La., January 24, 2018); Reynolds v. Newcomer, civil action no. 09-1077, 2009 U.S. Dist. LEXIS 123469, *Report adopted at* 2010 U.S. Dist. LEXIS 3901, 2010 WL 234896 (W.D.La., January 19, 2010).

Walker complains that there are no climbing implements in the housing to accommodate safe access to the top bunk.  The courts have held that the Constitution does not require that top bunks be provided with ladders.  *See, e.g.*, Grant v. Aubrey Cole Law Enforcement Center, civil action no. 1:09cv772, 2012 U.S. Dist. LEXIS 106482, 2012 WL 3112060 (E.D.Tex., June 26, 2012, *Report adopted at* 2012 U.S. Dist. LEXIS 106481, 2012 WL 3115036 (E.D.Tex., July 31, 2012) (stating that "the Constitution does not require ladders for bunk beds"); Hawthorne v. Cain, civil action no. 10-0528, 2011 U.S. Dist. LEXIS 79681, 2011 WL 2973690 (M.D.La., June 8, 2011, *Report adopted at* 2011 U.S. Dist. LEXIS 79674, 2011 WL 2941308 (M.D.La., July 21, 2011) (failure of prison officials to equip the bunk with a ladder "simply does not amount to the deprivation of a minimal civilized measure of life's necessities"); Connolly v. County of Suffolk, 533 F.Supp.2d 236, 241 (D.Mass. 2008, no appeal taken) (same).  In Armstrong v. Terrebone Parish Sheriff, civil action no. 06-573, 2006 WL 1968887 (E.D.La., June 6, 2006), the Eastern District of Louisiana concluded that a swivel chair was a reasonable means by which an inmate could get into the top bunk, noting that "the Constitution requires neither ladders for bunk beds nor call boxes to remedy the fall experienced by the plaintiff."

Walker asserts that the housing area is infested with spiders, birds, and insects during the warm months.  The Coffield Unit is located in rural East Texas, a land where such creatures are a fact of life.  The presence of pests, by itself, is not a constitutional violation.  *See* Morrison v. Bench, civil action no. 3:09cv1003, 2009 U.S. Dist. LEXIS 116515, 2009 WL 4858066 (N.D.Tex., December 14, 2009) (claim was frivolous where prisoner was placed in solitary confinement and required to relocate to cells at the end of the building which were infested with bugs and mosquitos); Bush v. Monroe, civil action no. 6:17cv541, 2018 U.S. Dist. LEXIS 145428 (E.D.Tex., July 30,

2018), *Report adopted at* 2018 U.S. Dist. LEXIS 144167, 2018 WL 4042418 (E.D.Tex., August 24, 2018) (living in a leaky cell with insects, broken doors, and rust may be undesirable and uncomfortable but is not itself a constitutional violation, citing Rhodes and Wilson v. Lynaugh); Fountain v. Rupert, civil action no. 6:15cv100, 2018 U.S. Dist. LEXIS 155480 (E.D.Tex., August 6, 2018), *Report adopted at* 2018 U.S. Dist. LEXIS 155060, 2018 WL 4346645 (E.D.Tex., September 12, 2018) (dismissing claim that plaintiff was held in bug-infested cells, absent any specific facts, connection of those conditions to actions by the Defendants, or any showing of harm); Waller v. Ward, 2016 WL 7235832 at *3 (mere presence of pests does not amount to a constitutional violation, collecting cases).

Next, Walker contends that he is in danger from other prisoners who are addicted to a drug called K-2, who are violent and commit unprovoked attacks. He states that "the lack of security combined with the present security failure to act creates that risk and those dangers." He does not allege that he has been assaulted.

As noted above, prison officials have a duty not to be deliberately indifferent to the safety of their prisoners. Farmer, 511 U.S. at 837-38. In this case, Walker fails to allege any facts showing deliberate indifference on the part of the Defendants. Instead, he alleges no more than that other prisoners in his housing area are generally dangerous.

As Justice Thomas has observed, prisons are necessarily dangerous places, housing society's most violent and anti-social people in close proximity with one another; regrettably, therefore, some level of brutality and aggression is inevitable among prisoners no matter what the guards do, unless all prisoners are locked in their cells 24 hours a day and sedated. Farmer, 511 U.S. at 858-59 (Thomas, J., concurring), *citing* McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir. 1991); *accord*, Verrette v. Major, civil action no. 07-cv-00547, 2011 U.S. Dist. LEXIS 83519, 2011 WL 3269319 (W.D.La., July 29, 2011), *aff'd* 505 F.App'x 368, 2013 U.S. App. LEXIS 320, 2013 WL 49574 (5th Cir., January 4, 2013).

Consequently, mere generalized knowledge that some prisoners may be dangerous is not enough to support a finding of deliberate indifference.  Even general knowledge about a particular inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.  Van Williams v. Samaniego, civil action no. EP-05-CA-491, 2007 WL 9701460 (W.D.Tex., February 22, 2007), citing Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003).  Walker's claim that other unnamed prisoners may have violent tendencies is insufficient to show that the Defendants are deliberately indifferent to his safety.

In addition, Walker does not allege any harm resulting from the claimed failure to protect. The Fifth Circuit has stated that "absent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim."  He has failed to state a claim upon which relief may be granted in this regard.

10. Other Issues

Walker asks for compensatory and punitive damages against the Defendants as part of his relief sought.  To the extent he seeks monetary damages against the Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).

To the extent Plaintiff seeks injunctive relief against Warden Cooper, such cannot be granted because Warden Cooper is no longer at the Coffield Unit.  Instead, TDCJ-CID records show that Cooper is now the senior warden at the Stringfellow Unit in Rosharon, Texas.  See  https://www. tdcj.state.tx.us/unit_directory/r2.html. Warden Cooper thus has no authority to grant any injunctive relief to Walker concerning the conditions of confinement at the Coffield Unit.  See Okpalobi v. Foster, 244 F.3d 405, 425-27 (5th Cir. 2001).

The Fifth Circuit, citing Rhodes, has explained that the totality of conditions of confinement does not offend the Constitution unless prison conditions are cruel and unusual, and not merely harsh or restrictive.  Ruiz v. Estelle, 679 F.2d 1115, 1139-40 (5th Cir. 1982).  Walker's pleadings

fall short of alleging that the Defendants are responsible for, and should be held liable for, cruel and unusual conditions of confinement.  He has failed to state a claim upon which relief may be granted.

## IV. Conclusion

In proceeding under Fed. R. Civ. P. 12, a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.  These procedures alert him to the legal theory underlying the defendants' challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid cause of action.  This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of a case.  Neitzke v. Williams, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In this case, the Defendants filed a motion for more definite statement under Fed. R. Civ. P. 12(e) and this motion was granted, giving Walker to the opportunity to amend his complaint to set out specific facts in support of his claims.  After the amended complaint was filed, the Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), giving Walker the opportunity to amend his complaint again or to file a reply to the motion.

Walker filed a lengthy and detailed reply to the motion to dismiss which the Court has carefully reviewed.  Viewing Walker's pleadings with the liberality befitting his *pro se* status and taking his factual and non-conclusory allegations as true, the court has determined that Walker failed to state a claim upon which relief may be granted because he has not set out sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face.  Iqbal, 556 U.S. at 678.  The Defendants' amended motion to dismiss should be granted.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion to dismiss (docket no. 31) be granted and the above-styled civil action dismissed with prejudice for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections.  *See* Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error.  Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc).*

**So ORDERED and SIGNED this 10th day of January, 2019.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

26