IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNNY LEE WALKER #1215501 | § | |
| v. | § | CIVIL ACTION NO. 6:17cv166 |
| BRYAN COLLIER, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Johnny Lee Walker, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Walker named TDCJ-CID Director Lorie Davis, TDCJ Executive Director Bryan Collier, Wardens Jerry Catoe, Jeffrey Richardson, and Patrick Cooper of the Coffield Unit, and the Texas Board of Criminal Justice.

**I. Background**

Walker raised a lengthy litany of allegations in his amended complaint. He asserted that: (1) his constitutional rights were violated because he was double-celled in a 45 square foot cell, including for 24 hours a day during unit lockdowns; (2) the Coffield Unit does not have designated sleep hours and activities go on through the night, disrupting his sleep; (3) the showers are overcrowded; (4) there are no accessible public toilets in the general population living areas (i.e. the dayroom) and the required hourly egresses are not conducted; (5) the unit suffers from structural problems which cause him to be exposed to excessive heat and cold; (6) the chow hall is unsanitary; (7) the water is contaminated with coliform bacteria; (8) the unit is deteriorating; (9) there are no

1

climbing implements to allow access to the top bunk; and (10) the unit is infested with birds, spiders, and insects.

The Defendants filed a motion to dismiss asserting that Walker did not claim any injuries stemming from overcrowded showers, lacks of toilets in the dayroom, chow hall contamination, or unsafe living and housing areas. They contended that Walker's allegations were conclusory and that he did not provide any specific dates for the alleged Eighth Amendment violations.

The Defendants also maintained that Walker set out no allegations against the Texas Board of Criminal Justice. They argued that they are not liable under any theories of *respondeat superior* and that Walker did not show any personal involvement or causal connection between any named Defendants and the alleged violations. Instead, the Defendants stated that Walker provided only conclusory allegations of deliberate indifference.

Walker filed a reply to the motion asserting that the Board of Criminal Justice is the final policy-maker and that the Defendants are liable under *respondeat superior* if they failed to properly train and oversee, give orders to, and discipline their staff after learning of the wrongful acts. He argued that the Defendants continue housing Walker and other inmates in the unsafe living areas while knowing of the dangers and risks.

Walker asserted that he suffered physical injuries as a result of exposure to the heat and cold, the contaminated food and water, the sleep deprivation, inadequate living space, and unsafe housing, although he provided no facts concerning these injuries. Instead, Walker stated that he is in "constant dangers and health risks daily" from overcrowding, chow hall contamination, and unsafe housing. He stated that he places his life at risk from sexual assaults and incurable viruses every time he enters the shower, his consumption of "food-borne pathogen bacteria" three times a day has possibly caused irreversible harm and unknown diseases, and he has injured himself multiple times trying to get to his bunk.

## II. The Report of the Magistrate Judge

After review of the pleadings, the Magistrate Judge issued a Report recommending that the motion to dismiss be granted. The Magistrate Judge set out the standards applicable to motions to dismiss as follows:

> Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient.
>
> A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability. *Id*.; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).
>
> Pro se plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but pro se plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.
>
> If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. Id. (citing Fed. R. Civ. P. 8(a)(2)). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

The Magistrate Judge further stated that supervisors cannot be held liable for the actions of their subordinates under any theory of supervisory liability, but that supervisors may be held liable if there exists (1) his personal involvement in a constitutional deprivation, (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, or (3) if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *Terry v. LeBlanc*, 479 F.App'x 644, 2012 U.S. App. LEXIS 17110, 2012 WL 3496399 (5th Cir., August 15, 2012). Conclusory allegations of the creation or existence

3

of a policy or custom are insufficient to establish supervisory liability. *Rivera v. Salazar*, 166 F.App'x 704, 2005 U.S. App. LEXIS 29186, 2005 WL 3588443 (5th Cir., December 30, 2005), *citing Thompkins and Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Government officials cannot be held liable merely because they acquiesced in their subordinate's misconduct. *Iqbal*, 556 U.S. at 677; *Sterns v. Epps*, 464 F.App'x 388, 2012 U.S. App. LEXIS 5678, 2012 WL 911889 (5th Cir., March 19, 2012) (prison supervisor could not be liable because he was not personally involved in an incident).

The Magistrate Judge discussed each of Walker's claims separately and determined that each of them failed to state a claim upon which relief may be granted. Walker has filed objections to the Report.

**II. The Plaintiff's Objections**

<u>A. Double Celling</u>

Walker complained that he has suffered from "severe mental and physical health problems" because he is double-celled in a 45 square foot cell, rendering him unable to protect himself from violent, aggressive, or mentally unstable cell mates. He also complained that this placed him at risk of disease from infected cell mates. Every six months, during unit lockdowns, he is confined in the cell with his cell mate for 24 hours a day.

Walker asserted that the practice of double-celling was held unconstitutional in *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *modified in part in other respects* 688 F.2d 266 (5th Cir. 1982), but the Magistrate Judge observed that in *Ruiz*, the Fifth Circuit vacated the district court's holding that double-celling was cruel and unusual punishment. Instead, the Magistrate Judge stated that the Supreme Court and the Fifth Circuit have consistently held that double-celling of prisoners is not cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347–50, 101 S.Ct. 2392, 69 L.Ed.2d 58 (1981); *Lineberry v. U.S.*, civil action no. 5:08cv72, 2009 U.S. Dist. LEXIS 15293, 2009 WL 499763 (E.D.Tex., February 27, 2009, *appeal dismissed as frivolous* 436 F.App'x 293, 2010 U.S. App. LEXIS 11269, 2010 WL 7114190 (5th Cir., June 3, 2010) (rejecting complaint of

double-celling at the Federal Correctional Institution at Texarkana); *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004), *citing Rhodes*, 452 U.S. at 347-50. Thus, the Magistrate Judge determined that Walker failed to state a claim upon which relief could be granted.

In his objections, Walker repeats his contention that "this Court and the Defendants are aware that the ruling in *Ruiz v. Estelle* outlawed it as unconstitutional to place [two] prisoners in a cell of 45 square feet." The Magistrate Judge correctly determined that this assertion is simply incorrect; while the district court in *Ruiz* may have held double-celling unconstitutional, this holding was vacated by the Fifth Circuit. *Ruiz v. Estelle*, 679 F.2d at 1148, 1150-61, 1165. Walker's objection on this point is without merit.

B. Designated Sleep Hours

Walker complained that he is unable to get five hours of uninterrupted sleep because of activities which go on through the night, including mail call, lay-ins, counts, linen exchange on Thursdays, chow call, pill window, outgoing chains, population shower and vocational turnout, field force and recreation turnout, dayroom time, passes, and work call.

The Magistrate Judge, citing *Walker v. Nunn*, 456 F.App'x 419, 2011 U.S. App. LEXIS 26073, 2011 WL 6934496 (5th Cir. 2011), stated that prisons have to operate on a 24-hour basis in order to perform the tasks required to keep the prison functioning. That case held that the structure of the prison schedule is reasonably related to legitimate penological interests and there was no Eighth Amendment violation in the fact that the 24 hour schedule of operations prevented the prisoner from getting adequate sleep. Although the plaintiff complained of policies of depriving prisoners of sleep and ignoring staff misconduct, the Fifth Circuit stated that no evidence was offered of such policies.

The Magistrate Judge observed that the Coffield Unit is the single largest unit in the Texas prison system and necessarily requires a 24 hour schedule of operations. In his complaint, Walker did not allege that the Defendants had a culpable state of mind as required for the infliction of punishment, nor that the sleep disturbances were done in an unnecessary or wanton manner to

5

prevent him from sleeping rather than resulting from activities necessary to keep a community of almost 4,000 persons functioning.

In his objections, Walker contends that inmates are supposed to get at least six hours of uninterrupted sleep, although he offers no source for this alleged right. He complains that the Wardens have implemented policies which cause him to be awakened "every hour on the hour" during the night. Walker contends that "security, under the directive of the wardens, are allowed to use any means to wake offenders up during the night. This includes kicking the cell door or racking the metal keys across the cell front."

However, as in *Walker v. Nunn*, Walker offers nothing beyond this conclusory assertion to show that any of the named defendants implemented customs or policies permitting security guards to kick cell doors or rack their keys across the front of the doors. This is not sufficient to set out a claim against the supervisory officials. *Montez v. Hampton*, 595 F.App'x 418, 2015 U.S. App. LEXIS 3237, 2015 WL 860644 (5th Cir., March 2, 2015), *citing Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Magistrate Judge correctly concluded that the Coffield Unit necessarily ran on a 24 hour schedule in order to function. Walker's objection on this point is without merit.

C. Overcrowded Showers

Walker complained that the showers are overcrowded and lack partitions to protect privacy. He alleged that the wardens showed deliberate indifference by creating unspecified policies that "place him vulnerable to assaults of an assailant's predatory nature while showering." Walker did not identify any policies nor state that he had ever suffered any harm as a result of this circumstance.

The Magistrate Judge determined that overcrowded showers were not a *per se* constitutional violation and that the mere knowledge that some prisoners may be dangerous is not enough to support a finding of deliberate indifference. The Magistrate Judge therefore stated that Walker's conclusory allegations of unspecified "policies" and his inchoate allegations of possible dangers did not state a claim upon which relief may be granted.

In his objections, Walker stated that "the unit wardens and their staff force more than 250 inmates in a shower areas [sic] designed to serve 75 inmates. There are no partition between each shower. Walker must shower with his genitals exposed before known sexual predators. The Defendants are aware they are violating multiple PREA [Prison Rape Elimination Act] violations but fail to remedy the problems."

As the Magistrate Judge stated, the fact that the shower is overcrowded is not itself a constitutional violation. The fact that Walker had to use a communal shower in a maximum security prison, in the presence of inmates who may have been convicted of sex offenses, likewise does not state a claim upon which relief may be granted. *See Cable v. Wall*, civil action no. 09-439, 2010 U.S. Dist. LEXIS 37176, 2010 WL 1486494 (D.R.I., March 18, 2010), *Report adopted at* 2010 U.S. Dist. LEXIS 37143, 2010 WL 1531374 (D.R.I., April 13, 2010) (allegation that prisoner, a juvenile confined in an adult detention facility, had to go to recreation and take showers in the same area as adult men who were sex offenders and child molesters, and the men "talked dirty" to him and masturbated while watching him shower, did not state a claim upon which relief may be granted).

The Prison Rape Elimination Act does not create a private cause of action or a federal right enforceable in a §1983 action, so Walker cannot bring any claims under that Act. *Kreig v. Steele*, 599 F.App'x 231, 2015 U.S. App. LEXIS 6109, 2015 WL 1652327 (5th Cir., April 15, 2015); *Means v. Stephen*, civil action no. 1:18cv140, 2019 U.S. Dist. LEXIS 28807, 2019 WL 847944 (W.D.La., January 31, 2019), *Report adopted at* 2019 U.S. Dist. LEXIS 28083, 2019 WL 847457 (W.D.La., February 21, 2019). Walker's objections on this point are without merit.

D. Accessible Public Toilets

Walker asserted that there are no publicly accessible toilets in the dayroom, but the required hourly ingresses and egresses, which would allow him access to the toilet in his cell, are not conducted by the floor officers. He contended that if he asks to be allowed to use the toilet, the floor officers tell him to "hold it or find a corner in the dayroom."

The Magistrate Judge stated that Walker did not allege that the named Defendants are personally involved in any constitutional deprivation, but that on the contrary, he conceded that the supervisory officials established policies for hourly ingresses and egresses from the dayroom. Walker claimed that these policies are not followed by the floor officers, but he did not sue any of the floor officers. The Magistrate Judge determined that the supervisors are not vicariously liable for the actions of their subordinates, and that Walker therefore failed to state a claim against the Defendants.

In his objections, Walker repeats his allegations that the floor officers do not conduct the required ingresses and egresses and complains that the floor officers "mock and laugh at him" when he was unable to hold his bowels and soiled himself. With regard to the Defendants, he alleges only that "the wardens are aware that there are not public toilets accessible for inmates and they are aware of the constitutional violations committed by their staff and failed to correct it." This entirely conclusory assertion offers nothing to suggest that the Magistrate Judge's Report was incorrect. Walker's objection on this point is without merit.

E. Structural Problems - Heat and Cold

In his amended complaint, Walker asserted that the outer walls of the building consist of small window panes from floor to ceiling, and the sun shines into the cells, leaving no escape from the heat. He stated that an unidentified "expert" has determined that the circular fans provided by the unit simply stir the hot air around. He added that he has hypertension and takes heat sensitive medications, causing him to suffer pain as well as the risk of heart attack or stroke. The Defendants have suggested that he drink lots of water and he is supposed to be able to visit a respite area for five minutes, but the floor officers do not honor the respite area. There is a fan in the living area, but it does little good.

In the winter, Walker asserts that many of the window panes are not properly sealed and cold air seeps into the housing areas. He states that the heat system barely puts out heat, and in any event it faces the windows, not the housing areas. He is provided with a "tattered and poorly insulated

8

jacket and tattered blanket" and sleeps in all of the clothing, necessities, and linen provided, but he is still uncomfortably cold.

The Magistrate Judge stated that without the requisite proof of both subjective and objective components of an Eighth Amendment violation, merely uncomfortable heat in a prisoner's cell does not reflect a basic human need that the prison failed to meet and thus is not constitutionally suspect, citing *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015). The Magistrate Judge determined that Walker's vague and general allegations were not sufficient to state a claim upon which relief may be granted. Walker concedes that the Defendants have provided a fan for the living area, circular fans for the cells, and respite areas. The Defendants also instructed the prisoners to drink a lot of water during periods of heat.

The Magistrate Judge stated that the fact that the fans may not be as effective as Walker would like does not show deliberate indifference and that according to Walker, it was the floor officers, not the Defendants, who allegedly impeded access to the respite areas.

With regard to the cold, the Magistrate Judge likewise concluded that Walker failed to allege subjective deliberate indifference on the part of the Defendants. The Magistrate Judge observed that Walker conceded he was issued a blanket and a jacket for protection from the cold, and the fact that they were not as effective as he would have liked did not show deliberate indifference.

In his objections, Walker asserts that "the defendants had a policy or custom of housing inmates in the dangerous and hazardous health risk conditions while knowing a any giving [sic] moment an inmate may suffer heat illness and/or die. The lack of security increases the risk because there are no wellness heat checks and inadequate medical response. The Unit has very poor ventilation with excessive heat comfortably [sic] in triple digits creates an oven-like effect. Walker is at daily risk during the hot summer months."

The Supreme Court has explained that a party which files a timely objection is entitled to a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *United States v. Raddatz*, 447 U.S. 667, 673

(1980); 28 U.S.C. §636(b)(1). The objections must specifically identify those findings or recommendations to which objections are being made. This comports with Fed. R. Civ. P. 72(b)(2), which provides that within 14 days after being served with a copy of the Magistrate Judge's recommended disposition, a party may serve and file "specific written objections" to the proposed findings and recommendations. Once this is done, Rule 72(b)(3) provides that the district judge must determine *de novo* any part of the Magistrate Judge's disposition that has been "properly" objected to.

The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Moreover, where the objections are repetitive of the arguments already made to the magistrate judge and the district court finds no error, the court need not make new findings or reiterate the findings of the magistrate judge. *Hernandez v. Livingston*, 495 F. App'x 414, 2012 U.S. App. LEXIS 21988, 2012 WL 5195813 (5th Cir., October 22, 2012); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).

Walker's objections concerning the Magistrate Judge's recommended disposition of his heat claim are not specific, but conclusive and general. He offers only conclusions and naked assertions devoid of further factual enhancement to show the existence of a policy or custom and his complaints about the actions of the security or medical officers do not invoke *respondeat superior* liability. Conclusory claims of excessive heat and inadequate ventilation, without more, fail to implicate a federal right. *Clark v. Gusman*, civil action no. 11-2673, 2012 U.S. Dist. LEXIS 69844, 2012 WL 1825306 (E.D. La. Mar. 29, 2012), *Report adopted at* 2012 U.S. Dist. LEXIS 69845, 2012 WL 1825302 (E.D.La., May 18, 2012), *citing Johnson v. Thaler*, 1999 U.S. App. LEXIS 39125, 1999 WL 1131941 (5th Cir., Nov. 12, 1999). These objections are without merit.

Walker states that "during the cold winter months, Walker can find no comfort. His bones ache and he is constantly sick with flu and cold congestion. The Defendants have a policy or custom of not providing adequate clothing and bed linen to protect him from the excessive cold temperature. Hundreds of windows throughout the building is [sic] improperly sealed and many of the windows

that open is [sic] off track and will not close. The wardens are aware of these facts but fail to remedy the problem."

These objections likewise are not specific, but conclusive and general. Walker acknowledged that he was given a blanket and a jacket and offered nothing to suggest that the Defendants had a policy of giving out such items but ensuring that they were not adequate, nor that the blanket and jacket he received demonstrated deliberate indifference. Nor do his allegations show subjective deliberate indifference concerning the windows. Walker's objections on this regard are without merit.

F. Unsanitary Dining Hall conditions

Walker contended that the dining hall is filthy and infested with birds and insects. He also states that the utensils are broken and carry food-borne pathogens because they are not washed at the mandatory temperature and without adequate detergent. He does not state that he works in the dining hall or otherwise has personal knowledge of how the utensils are washed, nor does he allege that he has ever become ill as a direct result of these conditions. Walker asserted that the wardens have observed the conditions in the dining hall and these conditions have been brought to the attention of Collier and Davis, but nothing has been done.

The Magistrate Judge determined that the Constitution does not require that prisons be completely sanitized or as clean and free from potential hazards as a person's home might be, nor does the Constitution protect prisoners from discomfort and inconvenience. Without an allegation of resulting harm, the courts have generally held that complaints of food service practices are not of a constitutional dimension.

Walker did not allege any harm resulting from the allegedly unsanitary conditions, although he contended that these had been ongoing for years. The Magistrate Judge cited a number of cases in which allegations of unsanitary food service without a showing of harm, or an allegation of harm such as a general complaint of stomach pain, were held not constitutional violations. Furthermore,

the Magistrate Judge stated that mere negligence in the handling of food services did not amount to a constitutional violation.

In his objections, Walker states as follows: "the Coffield Unit chow hall is the most filthiest [sic] department of the Unit. Captain Felicia Turner, the food service manager, practice[s] unsafe health and food violations. The wardens have admonished her many times but she continue in her 'trash can methods.' The Defendants failed to properly train and oversee their subordinates. Walker is at constant health risk of food borne pathogens and other viruses and diseases from the numerous health violations the Defendants are custom to allowing [sic]. Walker need not await to be infected to complain."

Walker's objections indicate that Captain Turner, who is not named as a defendant in the lawsuit, is the person responsible for the alleged conditions of which he complains. He does not assert that the Defendants have implemented any specific policies or customs causing these conditions, but on the contrary states that the wardens have "admonished her many times." *See Doe v. Harris County, Texas*, 751 F.App'x 545, 2018 U.S. App. LEXIS 32516, 2018 WL 6039171 (5th Cir., November 16, 2018) (stating that "the simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*.")

Although Walker claims that "the defendants failed to properly train and oversee their subordinates," this single conclusory assertion is not sufficient to survive a motion to dismiss. The Fifth Circuit has held that in a failure to train claim, the plaintiff must show that the supervisor either failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train or supervise amounts to deliberate indifference. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). In order to survive a motion to dismiss on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Conclusory allegations of failure to supervise likewise cannot survive a

motion to dismiss. *See Silva v. Moses*, 542 F.App'x 308, 2013 U.S. App. LEXIS 20101, 2013 WL 5450799 (5th Cir., October 1, 2013), *citing Roberts*, 397 F.3d at 292; *Bohannan v. Doe*, 527 F.App'x 283, 2013 U.S. App. LEXIS 11834, 2013 WL 2631197 (5th Cir., June 12, 2013), *citing Iqbal*, 556 U.S. at 678. Walker has shown no basis for imputing *respondeat superior* liability to the Defendants for the alleged actions of Captain Turner. His objection on this point is without merit.

### G. Contaminated Water

Walker asserts that the water at the Coffield Unit is contaminated with coliform bacteria, which has caused many inmates to become infected with H.pylori. The Magistrate Judge stated that Walker offered no substantiation for this claim, observing that Walker's personal belief that the water is contaminated is not sufficient to support a claim. The Magistrate Judge also observed that Walker did not allege that he had suffered any harm as a result of the alleged contamination.

In his objections, Walker states that "the defendants have been informed and they have reported that the Unit's drinking water is unsafe for consumption but have not remed[ied] the problem. Walker is forced to drink the unsafe water to hydrate his body. The water has an excessive amount of coliform bacteria and as a result, Walker has contracted H.pylori bacteria and has been having stomach and intestinal pains accompanied indigestive complications."

The repetition of conclusory allegations does not make them any less conclusory. The Magistrate Judge correctly determined that Walker's personal belief that the water was contaminated, without more, is not sufficient to support a claim. *See Rougley v. GEO Group*, civil action no. 2:10-cv-1094, 2011 U.S. Dist. LEXIS 154995, 2011 WL 7796488 (W.D. La. Nov. 7, 2011), *Report adopted at* 2012 U.S. Dist. LEXIS 63389, 2012 WL 1596709 (W.D. La., May 2, 2012) (dismissing an inmate's claim as frivolous where the inmate provided only conclusory assertions, without supporting facts, that the food served at the prison was contaminated); *McIntosh v. Camp Brighton*, civil action no. 14-cv-11327, 2014 U.S. Dist. LEXIS 54652, 2014 WL 1584173 (E.D. Mich., Apr. 21, 2014) (dismissing an inmate's claim as frivolous where her allegations of

contaminated water were conclusory and she failed to "set forth any specifics, such as . . . why she believe[d] the drinking water was contaminated.")

Walker cites a case called *Cole v. Collier*, 2016 U.S. Dist. LEXIS 7509, 2016 WL 279268 (S.D.Tex., January 22, 2016) saying that case is similar to his because *Cole* involved excessive levels of arsenic in the water at the Pack Unit, while he claims excessive levels of coliform bacteria in the water at the Coffield Unit. In *Cole*, it was not disputed that the water at the Pack Unit contained an excessive level of arsenic, although it was the only prison water system in violation of EPA standards. By contrast, Walker offers only his unsubstantiated belief to support his claim of water contamination. Such unsubstantiated beliefs and naked assertions devoid of further factual enhancement are not sufficient to survive a motion to dismiss.

Walker asserts, for the first time in his objections, that he himself has contracted H.pylori, speculating that this was through the water. Facts and issues raised for the first time in objections to the Magistrate Judge's Report are not properly before the district court. *Sias v. Jacobs*, civil action no. 6:17cv413, 2018 U.S. Dist. LEXIS 42514, 2018 WL 1335424 (E.D.Tex., March 14, 2018, appeal dismissed), *citing United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992) *and Cupit v. Whitely*, 28 F.3d 532, 535 n.5 (5th Cir. 1994).

Even were this assertion properly before the Court, it nonetheless lacks merit. Walker offers nothing beyond his own self-diagnosis that he has contracted H.pylori. A prisoner's self-diagnosis of a serious medical condition is insufficient without medical evidence verifying that the condition exists. *See Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995); *accord*, *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion); *McClure v. Foster*, civil action no. 5:10cv78, 2011 U.S. Dist. LEXIS 14546, 2011 WL 665819 (E.D. Tex., January 7, 2011), *Report adopted at* 2011 U.S. Dist. LEXIS 15437, 2011 WL 941442 (E.D. Tex., February 16, 2011), *aff'd* 465 F. App'x 373, 2012 U.S. App. LEXIS 6385, 2012 WL 1059408 (5th Cir., March 29, 2012) (citing *Aswegan* and *Kayser*).

Furthermore, even if Walker does have H.pylori, he offers nothing beyond speculation to show that this was caused by contaminated water. Approximately 30 percent of the adult population of the United States is infected with H.pylori, and while contaminated water is one way it can be contracted, the mechanism of exposure is not well known and there may be many ways to contract it. The prevalence of H.pylori in the general population and the fact that some people experience no symptoms make it difficult to identify the source of exposure in infected patients, who may have had the bacteria for a substantial time, even years, before being diagnosed. *See Wright v. New York State Department of Correctional Services*, civil action no. 06-cv-3400, 2008 U.S. Dist. LEXIS 106507, 2008 WL 5055660 (S.D.N.Y., October 10, 2008), *Report adopted at* 2008 U.S. Dist. LEXIS 96647, 2008 WL 5084193 (S.D.N.Y., November 24, 2008), *aff'd* 372 F.App'x 175, 2010 U.S. App. LEXIS 8113, 2010 WL 1559735 (2nd Cir., April 20, 2010) (discussing H.pylori in the context of complaint of alleged water contamination at the Green Haven Correctional Facility in New York). Walker's bare and conclusory allegations concerning water contamination and H.pylori are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. His objection on this point is without merit.

H. Unsafe Housing Areas - Lack of Ladders - Pest Infestation

Walker asserted that "the building is collapsing" and there are cracks in the floors, walls, and ceilings. He contended that the roof leaked, there is mold and exposed rust, there are no ladders to help inmates get into the top bunks, and there are insects, birds, and spiders in the housing areas.

Walker also contended that the housing areas are unsafe because he is in danger from prisoners who are addicted to a drug called K-2. He complained that these prisoners are violent and commit unprovoked assaults and that "the lack of security combined with the present security failure to act creates that risk and those dangers." However, Walker did not allege that he had been assaulted.

The Magistrate Judge stated that leaky roofs and exposed rust and mold, without more, do not show constitutional violations. The Magistrate Judge also observed that the Constitution does

not require that top bunks be provided with ladders. Although Walker complained about infestation by birds, spiders, and insects, the Magistrate Judge pointed out that the Coffield Unit is located in rural East Texas, where such creatures are a fact of life, and that the presence of such pests is not by itself a constitutional violation.

The Magistrate Judge acknowledged that prison officials have a duty not to be deliberately indifferent to the safety of their prisoners, but stated that Walker did not allege any facts showing that any of the Defendants had been deliberately indifferent. Instead, Walker complained only that other prisoners in his housing area were generally dangerous, and the mere generalized knowledge that some prisoners may be dangerous is not enough to support a finding of deliberate indifference. In addition, the Magistrate Judge stated that Walker did not allege any harm from the claimed failure to protect.

In his objections, Walker contends that "the defendants are aware of the numerous unsafe and hazards [sic] that plagues the living areas. Everything from birds, roaches, flies, fleas, gnats, spiders, wasps, bees, and snakes reside within this Unit walls. Walker is in danger from being bitten or infected by these named creatures at any time. He has been bitten several times by spiders and mosquitos." He also asserts that "the defendants are aware that there is no safe by-policy means of entering and exiting his bedding areas. Walker has injured himself numerous times and he is forced to remain under this health risk and unsafe living condition." He cites a Sixth Circuit case called *Brown v. Bargery*, 207 F.3d 863, 865 (6th Cir. 2000) in which the beds at the Hardaman County (Tennessee) Correctional Facility had been improperly installed upside down, causing prisoners to slide off their bunks and land on the concrete floor, possibly rolling into protruding anchor bolt studs.

The Magistrate Judge correctly determined that the fact that there were spiders, insects, and birds in a prison unit in rural East Texas was not by itself a constitutional violation. *See, e.g.*, *Alex v. Stalder*, 73 F.App'x 80, 2003 U.S. App. LEXIS 15770, 2003 WL 21756781 (5th Cir., June 24, 2003) (fact that snake came into prisoner's cell, and that he had been bitten by ants and spiders, did

16

not establish an Eighth Amendment violation and the case was correctly dismissed as frivolous); *Benjamin v. Gusman*, civil action no. 17-07014, 2018 U.S. Dist. LEXIS 48428, 2018 WL 1448759 (E.D.La., February 22, 2018), *Report adopted at* 2018 U.S. Dist. LEXIS 47201, 2018 WL 1419870 (E.D.La., March 22, 2018) ("mere presence of spiders or such similar pests does not rise to the level of a constitutional violation" even though plaintiff was bitten). Walker's objection on this point is without merit.

Although Walker complained that there are no climbing implements to allow inmates to gain access to the top bunks, the Magistrate Judge correctly stated that the Constitution does not require that top bunks be provided with ladders. *Brown v. Bargery*, which involved beds improperly installed upside down, does not speak to the issue of whether ladders are or should be required for properly installed beds and has no bearing on this case. Walker's objection on this point is without merit.

I. *Respondeat Superior* Liability

Walker argues that the Defendants were "personally involved, directly or indirectly" with the allegedly illegal acts. Citing a Second Circuit case from 1995, Walker contends that supervisors can be held liable if they participate in a constitutional violation, fail to remedy a wrong after being informed of the violation, create a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, were grossly negligent in supervising subordinates who committed the wrongful acts, or exhibited deliberate indifference by failing to act on information indicating that constitutional violations were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2nd Cir. 1995). However, as a number of courts have recognized, several of the categories set out in *Colon* were abrogated by *Iqbal*. *See, e.g.*, *Sash v. United States*, 674 F.Supp.3d 531, 543 (S.D.N.Y. 2009) (stating that "*Iqbal* effectively nullified several of the classifications of supervisory liability enunciated by the Second Circuit in *Colon v. Coughlin*.")

The law concerning *respondeat superior* liability in the Fifth Circuit provides that a supervisory official may only be held liable under §1983 if (1) he affirmatively participates in the

acts which cause the constitutional deprivation or (2) he implements unconstitutional policies that causally result in the constitutional injury. *Zadeh v. Robinson*, 902 F.3d 483, 497 (5th Cir. 2018). Conclusory allegations of the existence of a policy or custom will not survive a motion to dismiss. *Wilson v. Milam County*, 531 F.App'x 531, 2013 U.S. App. LEXIS 12990, 2013 WL 3185913 (5th Cir., June 25, 2013), *citing Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

The Magistrate Judge correctly determined that despite Walker's contention that his pleadings are sufficient, Walker offered only conclusory allegations and naked assertions devoid of further factual enhancement to support his claims of liability against the named Defendants. Such allegations are insufficient to establish supervisory liability. *Rivera v. Salazar*, 166 F.App'x at *706; *Oliver*, 276 F.3d at 742. Walker's objections are without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 54) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants's motion to dismiss (docket no. 31) is **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. It is further

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED**.

**So Ordered and Signed**
**Mar 28, 2019**

Ron Clark, Senior District Judge